UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TODD GROSSMAN and MUJO PEREZIC, each individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GEICO CASUALTY COMPANY, GEICO INDEMNITY COMPANY, and GEICO GENERAL INSURANCE COMPANY,<br><br>Defendants. | Case No.  21-2799<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiffs Todd Grossman and Mujo Perezic ("Plaintiffs") by and through undersigned counsel bring this action against GEICO Casualty Company, GEICO Indemnity Company and GEICO General Insurance Company ("Defendants" or "GEICO") on behalf of themselves and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

**PRELIMINARY STATEMENT**

1.  Plaintiffs bring this case as a result of GEICO's unfair profiting from the global COVID-19 pandemic.

2.  Beginning in March 2020, states across the country, including New York, began to enforce strict social distancing measures to slow the spread of COVID-19.  This included closing schools and businesses and instituting strict "stay-at-home" orders that prevented most individuals from leaving their homes for extended periods of time.

3.  While many companies, industries and individuals have suffered as a result of the COVID-19 pandemic, auto insurers like GEICO have scored a windfall.  Not surprisingly, as a

result of a state-wide and nation-wide social distancing and stay-at-home measures, there has been a dramatic reduction in driving, and an attendant reduction in driving-related accidents. As a result of this decrease in driving and accidents, the premiums charged by auto insurance companies during the COVID-19 pandemic, including GEICO, are unconscionably excessive.

4. Despite full knowledge of these facts, GEICO has continued to charge and collect excessive premiums, and has failed to issue adequate refunds. The company's "GEICO Giveback" program is woefully inadequate to compensate for the excessive premiums that customers have paid as a result of COVID-19. The programs applies a 15% discount on new and renewal auto insurance policies only. It does not apply to the premiums that the customer has already paid or will continue to pay on policies already existing at the start of the COVID-19 pandemic. And even with respect to new and renewal policies, the 15% credit falls well short of an adequate return of premiums.

5. This action seeks disgorgement of ill-gotten gains obtained by GEICO to the detriment of its customers, all available damages, punitive damages, declaratory and injunctive relief, and all other available relief.

## PARTIES

6. Defendant GEICO Casualty Company is a Maryland corporation with its principal place of business in Chevy Chase, Maryland.

7. Defendant GEICO Indemnity Company is a Maryland corporation with its principal place of business in Chevy Chase, Maryland.

8. Defendant GEICO General Insurance Company is a Maryland corporation with its principal place of business in Chevy Chase, Maryland.

9. Plaintiff Todd Grossman is an individual and resident and citizen of the state of New York and held a personal auto insurance policy purchased from GEICO during the time period relevant to this lawsuit.

10. Plaintiff Mujo Perezic is an individual and resident and citizen of the state of New York and held a personal auto insurance policy purchased from GEICO during the time period relevant to this lawsuit.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

12. This Court has personal jurisdiction over Defendants because Defendants conduct business in New York and has sufficient minimum contacts with New York.

13. Venue is proper in this District under 28 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND FACTS

14. Plaintiffs were GEICO auto insurance policy holders during the time period relevant to this lawsuit.

15. On March 7, 2020, Governor Andrew Cuomo declared a statewide disaster emergency in response to the COVID-19 pandemic.[1]

---

[1] N.Y. Exec. Order No. 202 (Mar. 7, 2020), https://www.governor.ny.gov/news/no-202-declaring-disaster-emergency-state-new-york.

16. On March 20, 2020, Governor Cuomo signed the "New York State on PAUSE" Executive Order that went into full effect on March 22, 2020.

17. With the exception of essential businesses, the Order stated "All businesses and not-for-profit entities in the state shall utilize, to the maximum extent possible, any telecommuting or work from home procedures that they can safely utilize. Each employer shall reduce the in-person workforce at any work locations by 100% no later than March 22 at 8 p.m."[2]

18. The stay-at-home order was scheduled to remain in place until April 19, 2020. However, due to the increasing severity of the COVID-19 crisis, Governor Cuomo extended the order several times until June 13, 2020.

19. Although businesses across the United States have almost uniformly suffered as a result of COVID-19, state-wide stay-at-home orders, and other social distancing measures, the auto insurance industry has benefited. In fact, auto insurance – a $250 billion industry – stands to secure a windfall from COVID-19.

20. As stated by the Center for Economic Justice Consumer Federation of America: "With shelter-in-place restrictions and business closings, most people stopped driving or reduced their driving dramatically. With fewer cars on the road, there were dramatically fewer accidents. Fewer motor vehicle accidents mean fewer auto insurance claims."[3]

21. Beginning in mid-March of 2020, the number of miles driven by individuals has dropped dramatically because of COVID-19. This includes the State of New York. Through the

---

[2] *Id.*
[3] https://consumerfed.org/wp-content/uploads/2020/05/Auto-Insurance-Refunds-COVID-19-Update-Report-5-7-20.pdf.

use of cell phone location data, it has been reported that vehicle miles traveled in New York dropped significantly from their January 2020 average in March and April of 2020. [4]

| Date Range | Decrease in Miles Traveled |
|---|---|
| March 15 – March 21 | -52% |
| March 22 – March 28 | -77% |
| March 29 – April 4 | -80% |
| April 5 – April 11 | -81% |
| April 12 – April 18 | -80% |
| April 19 – April 25 | -77% |

Upon information and belief, decreases in pre-COVID miles traveled continued in May, June, and July 2020, and will continue for the foreseeable future.[5]

22. Automobile accidents have also decreased. For example, according to the New York Police Department, there were 7,456 motor vehicle accidents in June 2020 in New York City. This was a 61.5% decrease from June 2019, when there were 19,356 motor vehicle accidents in New York City.[6]

23. As a result of this dramatic decrease in driving and auto accidents, the rates set-and thus premiums charged-by auto insurance companies during the COVID-19 pandemic, including GEICO, are unconscionably excessive. Auto insurance rates, including those set by GEICO, are intended to cover the claims and expenses that they expect to occur in the future, extrapolated from

---

[4] *Id.* at 6-8.
[5] *Id.* at 2.
[6] https://www1.nyc.gov/assets/nypd/downloads/pdf/traffic_data/cityacc-en-us.pdf

historical data. Thus, as explained in the recent joint report by the Center for Economic Justice and the Consumer Federation of America:

> Because of COVID-19 restrictions, the assumptions about future claims underlying insurers' rates in effect on March 1 became radically incorrect overnight. When roads emptied, the frequency of motor vehicle accidents and insurance claims dropped dramatically and immediately. The assumptions insurers' rates covering time-frames from mid-March forward about future frequency of claims became significantly wrong when the roads emptied because of Stay-At-Home orders and business closures starting in mid-March. The then-current rates became excessive not just for new policyholders going forward, but also for existing policy holders whose premium was based on now-overstated expectation about insurance claims.[7]

24. The excessive premiums collected by GEICO during the COVID-19 pandemic have led to a substantial windfall in profits. It has been reported that for the first quarter of 2020 alone, GEICO generated a pretax underwriting gain of $984 million.[8] This was an increase of 27.8% from the same period in 2019. And according to its parent company, Berkshire Hathaway, in the second quarter of 2020, GEICO generated pre-tax underwriting earnings of $2.1 billion, which was an increase of 434% compared to the second quarter of 2019.

25. GEICO's astonishing windfall is a direct result of the fact that its premiums are excessive and not based on an accurate assessment of risk since the pandemic began, in violation of New York public policy.

26. According to conservative calculations by the Center for Economic Justice and Consumer Federation of America based on motor vehicle accident data, at least a 30% minimum average premium refund to consumers would be required to correct the unfair windfall to auto

---

[7] https://www.spglobal.com/marketintelligence/en/news-insights/latest-news-headlines/geico-s-claims-frequncy-falling-even-faster-than-q1-data-shows-58431662.
[8] *Id.*

insurance companies, including GEICO, just for the time period from mid-March through the end of April 2020.[9]

27. At all relevant times, GEICO has been aware of the excessive premiums that it has charged to and collected from policyholders in New York as a result of the COVID-19 crisis. GEICO has likewise been aware of its excessive profits. Despite this, GEICO has failed to adequately return these profits to its customers.

28. In Spring 2020, GEICO announced the "GEICO Giveback." Under the program, GEICO will give customers a 15% credit on their personal auto insurance premiums, but only if they are new customers, or existing customers who renew their policy during the applicable time period. Specifically, the credit is given for six-month policies renewed or newly purchased between April 8, 2020 and October 8, 2020 and twelve-month policies renewed or newly purchased between April 8, 2020 and October 7, 2021.

29. GEICO's credit program is inadequate to compensate for the excessive premiums that its customers have paid as a result of COVID-19. For existing customers who renew their policies, the credit does not apply at all to excessive premiums that the customer paid on their previous policies. And even with respect to new and renewal polices, the 15% credit is nowhere near the minimum 30% average refund benchmark that has been estimated as an adequate refund of premiums.

30. With full knowledge that its refund program was inadequate, GEICO has falsely claimed to its customers that it is in fact providing substantial and full relief. For example, on its

---

[9] CEJ/CFA Report, at 12-13

website, GEICO falsely claims that "shelter in place laws have reduced driving, and we are passing *these savings* on to our auto, motorcycle, and RV customers."[10](emphasis added).

31. Not surprisingly, GEICO's credit program has been met with immediate criticism. On April 13, 2020, the Consumer Federation of America gave GEICO's program a "D-" grade.[11] The CEJ/CFA report explains that GEICO's program "fails to match the relief to the relevant premium and policy," "doesn't provide relief for current policyholders," "fails to credit consumers for the current premium that has become excessive," and is "wrongly attempting to take credit for future – and in most cases distant future – rate reductions as if it were actually providing relief today to current policy holders."[12]

32. GEICO does not disclose the fact that its program compares unfavorably with the refund programs of all or nearly all other major auto insurers.

## FACTUAL ALLEGATIONS

33. On August 6, 2020, Plaintiff Grossman purchased a renewal policy from GEICO for the time period beginning September 10, 2020 and ending on March 9, 2020. Premiums were $883.80. With a "GEICO Giveback credit" of $132.57, Plaintiff paid $751 in premiums for that policy.

34. During the time that Plaintiff Grossman was considering renewing his policy with GEICO, he received advertisements, emails and other information from GEICO representatives concerning the "Giveback."

---

[10] https://www.geico.com/about/coronavirus/giveback/
[11] https://consumerfed.org/press_release/report-card-to-date-on-the-6-5-billion-promised-to-auto-insurance-customers-as-people-drive-less-due-to-covid-19/
[12] CEJ/CFA Report, at 16.

35. On April 3, 2020, Plaintiff Perezic purchased a renewal policy from GEICO for the period beginning on May 23, 2020 and ending on November 19, 2020. Premiums were $1,841.60 With a "GEICO Giveback credit" of $276.24, Plaintiff paid $1,565.36 in premiums for that policy.

36. GEICO's insurance policies, including the policies of the Plaintiffs and members of the putative class, contain the following provision:

> 3.   CHANGES
>
> The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a party of this policy.
>
> We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your state*.
>
> The premium for each auto is based on the information we have in *your* file. *You* agree:
>
> (a) That we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.
>
> (b) That *you* will cooperate with us in determining if this information is correct and complete.
>
> (c) That *you* will notify us of any changes in this information.
>
> Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

37. This provision gives GEICO broad discretion to adjust premiums if the information on which those premiums is based changes or becomes incorrect.

38. Plaintiffs' policies described above were in effect during the time period during which most of the United States, including New York, was significantly impacted by the global COVID-19 pandemic and during which stay-at-home orders, along with other measures and conditions, caused a widespread and dramatic decrease in automobile use and traffic. Despite this

GEICO only gave Plaintiffs an inadequate 15% credit on their renewal policy and no refund or credit for Plaintiffs' previous six-month policy.

39. Upon information and belief, thousands of other policyholders in New York have been injured by GEICO's policy and practice of charging and failing to refund excessive auto insurance premiums to policyholders due to the COVID-19 pandemic.

## CLASS ACTION ALLEGATIONS

40. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

41. Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

**The Class:**

All New York residents who had automobile, motorcycle, or RV insurance policies from GEICO in place and all New York residents who purchased automobile, motorcycle or RV insurance policies from GEICO covering any portion of the time period from March 1, 2020 to the present.

42. Excluded from the Class is GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company, and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case. Plaintiffs reserve the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

43. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

44. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

45. The members of the Class are so numerous and geographically dispersed that individual joinder of all members is impracticable. Plaintiffs are informed and believe that there are thousands of members of the Class, the precise number being unknown to Plaintiffs, but such number being ascertainable from the Defendants' records. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

46. This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Class, including, without limitation:

    (a)    Whether Defendants engaged in the conduct alleged herein;

    (b)    Whether Defendants have a common policy or practice of charging and failing to fully refund excessive auto insurance premiums to policyholders due to the COVID-19 pandemic;

    (c)    Whether Defendants' insurance rates and premiums were excessive;

    (d)    Whether Defendants violated the covenant of good faith and fair dealing;

    (e)    Whether Defendants breached their contracts with Plaintiffs and the other members of the Class by failing to fully refund excessive auto insurance premiums to policyholders due to the COVID-19 pandemic;

    (f)    Whether Defendants were unjustly enriched by their charging and failure to fully refund excessive auto insurance premiums;

    (g)    Whether Defendants violated New York General Business Law § 349, § 350 et seq. as to Plaintiffs and the other members of the Class;

    (h)    Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

    (i)    Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

    (j)    The amount and nature of relief to be awarded to Plaintiffs and the other members of the Class.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

47.    Plaintiffs' claims are typical of the claims of other members of the Class because, among other things, all such members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

48.    Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of other members of the Class they seek to represent. Plaintiffs have retained counsel competent and experienced in complex litigation and Plaintiffs intend to prosecute the action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

49. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and other members of the Class are relatively small compared to the burden and expense that would be required to individually litigation their claims against the Defendants, so it would be impracticable for members of the Class to individually seek redress for the Defendants' wrongful conduct.

50. Even if members of the Class could afford individual litigation, the court system likely could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

**Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)**

51. To the extent that any described Class herein does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiffs seek the certification of issues that will drive the litigation toward resolution.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

52. Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Class as a whole.

# CAUSES OF ACTION

## FOR A FIRST COLLECTIVE CAUSE OF ACTION
## BREACH OF CONTRACT
### (Plaintiffs and Other Members of the Class)

53. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

54. Plaintiffs bring this count on behalf of themselves and other members of the Class.

55. Plaintiffs and the members of the putative class purchased insurance contracts from Defendants.

56. Defendants' insurance contracts give GEICO the discretion to adjust premiums if the information on which those premiums is based changes or becomes incorrect.

57. Under New York law, a covenant of good faith and fair dealing is implied into every contract. A party is not permitted to engage in opportunistic advantage-taking, or lack of cooperation depriving the other contract party of their reasonable expectations.

58. Defendants' conduct as described herein constitutes opportunistic and advantage-taking and lack of cooperation and is a violation of the covenant of good faith and fair dealing.

59. Defendants breached the insurance contracts by exercising its contractual discretion in violation of the covenant of fair dealing and good faith. Defendants had discretion to adjust or refund the premiums when the information underlying the premiums became incorrect, incomplete or changed. That information changed and became incomplete and incorrect when the COVID-19 pandemic emptied New York's roads. But Defendants failed to exercise their contractual discretion to properly reduce or refund the excessive premiums.

60. Defendants failure to fully refund excessive auto insurance premiums was in bad faith, unreasonable, and in a manner inconsistent with the reasonable expectations of the parties.

61. Plaintiffs and members of the putative class have been injured as a direct and proximate result of Defendants' unlawful retention of excessive premium payments and by not reducing or refunding those excessive premiums.

62. As a direct and proximate result of Defendants' breach, Plaintiffs and other members of the Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action.

### FOR A SECOND COLLECTIVE CAUSE OF ACTION
### UNJUST ENRICHMENT
### (Plaintiffs and Other Members of the Class)

63. Plaintiffs incorporates by reference all preceding allegations as though fully set forth herein.

64. Plaintiffs bring this count on behalf of themselves and other members of the Class.

65. Plaintiffs plead this count in the alternative to count one.

66. Plaintiffs and other members of the Class paid substantial premiums on their personal auto insurance policies.

67. Plaintiffs and other members of the Class conferred a benefit on Defendants when they paid these premiums.

68. Defendants have realized this benefit by accepting such payment.

69. However, these premiums were unconsciously excessive.

70. Defendants have retained this benefit, even though Defendants were aware of the excessive premiums that they charged to and collected from policyholders.

71. As a result of the excessive premiums Defendants received a windfall.

72. Equity and good conscience require that the Defendants return to Plaintiffs and other members of the Class a portion of the premiums paid.

73. Defendants should be required to disgorge this unjust enrichment.

### FOR A THIRD COLLECTIVE CAUSE OF ACTION
### VIOLATIONS OF NY GENERAL BUSINESS LAW §§ 349, 350
### (Plaintiffs and Other Members of the Class)

74. Plaintiffs incorporates by reference all preceding allegations as though fully set forth herein.

75. Plaintiffs bring this count on behalf of themselves and other members of the Classes.

76. Plaintiffs and the other members of the Classes are consumers who purchased Defendants' products and services and were subjected to unfair, misleading, false and deceptive business practices and advertising as alleged herein.

77. At all times relevant, Defendants had a duty not to engage in unfair, misleading, false, or deceptive trade practices and/or false advertising under New York General Business Law §§ 349, 350 et. seq.

78. New York General Business Law § 349 (Deceptive Acts and Practices Unlawful) provides for consumer protection by declaring as unlawful: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ."

79. New York General Business Law § 350 (False Advertising Unlawful) provides that: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

80. Defendants, through its agents, servants, and employees, engaged in unlawful, unfair, deceptive and fraudulent acts and practices in violation of New York General Business Law §§ 349 and 350 by engaging in the activities described herein.

81. At all times relevant, Defendants through its uniform marketing and recruitment materials, engaged in "consumer oriented" conduct directed at Plaintiffs and other members of the Class.

82. Defendants' practices are intended for use, and in fact use, the global COVID-19 pandemic as a means to obtain an unfair economic windfall at the expense of consumers and through unfair competition; Defendants have charged, have continued to charge, and have failed to fully refund unconscionably excessive premiums with full knowledge of the amount and extend of their excess; Defendants falsely claim to their customers that they are providing substantial and full relief through their refund program and do not disclose that their refund program does not, in fact, provide full relief; Defendants do not disclose the amount of their excessive profits to their customers; Defendants make their premium refund program contingent on customers renewing their insurance policies; Defendants' conduct violates professional standard for rate-setting; and Defendants and their customers occupy unequal bargaining positions.

83. With full knowledge that its COVID-19 refund program is grossly inadequate, Defendants do not disclose that their premiums are not based on an accurate assessment of risk.

84. Such statements, representations and omissions, which were uniform and identical in nature, were intended to deceive Plaintiffs and other potential customers to continued to pay the unconscionably excessive premiums charged by Defendants.

85. The aforementioned statements, representations and omissions made by Defendants are objectively false, materially misleading and deceptive to Plaintiffs and the other members of the Class, as well as the public at large.

86. With the reasonable expectation that Defendants were providing substantial and full relief to their policyholders and that they were paying reasonable premiums, Plaintiffs and

other members of the Class continued purchasing auto insurance and paying premiums to Defendants.

87. As a result, Plaintiffs and other members of the Class were proximately caused to pay excessive and inflated premiums.

88. The acts and omissions of Defendants described above constitute deceptive business acts or practices and/or false advertising.

89. The injury caused by Defendants' charging and failure to fully refund excessive auto insurance premiums is substantial in light of the very conservative calculations that a 30% minimum average premium refund that would be required to correct the unfair windfall just for the time period from mid-March through the end of April 2020. Further, the injury is significant because Defendants' excessive premiums have allowed it to increase its profits by 27.8% in the first quarter of 2020, and by an astonishing 424% in the second quarter.

90. This injury could not reasonably have been avoided by consumers because they did not know and could not have known that Defendants were not, in fact, passing their savings on through the "Giveback" program.

91. As a result of Defendants' foregoing violations of New York General Business Law §§ 349, 350 et seq., Defendants have directly and proximately caused damage to Plaintiffs and other members of the Class and are entitled to recover actual damages in an amount to be determined at trial, and an award of reasonable attorneys' fees, expenses, costs and disbursements.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment in his favor and against Defendants as follows:

A. Certifying the Class as proposed herein, designating Plaintiffs as Class representatives, and appointing undersigned counsel as Class Counsel;

B. Declaring that Defendants are financially responsible for notifying the members of the Classes about the pendency of this action;

C. Declaring that Defendants wrongfully kept monies paid by means of excessive premiums;

D. Requiring that Defendants disgorge amounts wrongfully obtained for the excessive premiums;

E. Awarding damages in an amount to be determined at trial, including compensatory damages, consequential damages, treble damages, punitive damages, and any other damages provided under relevant laws;

F. Awarding injunctive relief as permitted by law or equity, including enjoining Defendants from retaining the different between the excess premiums and the reasonable premium;

G. Scheduling a trial by jury in this action;

H. Awarding Plaintiffs' reasonable attorney's fees, costs and expenses, as permitted by law;

I. Awarding pre and post-judgment interest on any amounts awarded, as permitted by law; and

J. Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

Dated: April 1, 2021

**TOPTANI LAW PLLC**

/s/ *Edward Toptani*
Edward Toptani (ET6703)
375 Pearl Street, Suite 1410
New York, New York 10038
Tel: (212) 699-8930

Email: edward@toptanilaw.com

-and-

**ANASTOPOULO LAW FIRM, LLC**
Eric M. Poulin (*Pro Hac Vice* Forthcoming)
Roy T. Willey, IV (*Pro Hac Vice* Forthcoming)
Blake G. Abbott (*Pro Hac Vice* Forthcoming)
32 Ann Street
Charleston, SC 29403
Tel: (843) 614-8888
Email: eric@akimlawfirm.com
roy@akimlawfirm.com
blake@akimlawfirm.com

***ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASS***